89 So.2d 645 (1956)
Dolores Fullman ASTOR, Appellant,
v.
John Jacob ASTOR, Appellee.
Supreme Court of Florida. Special Division B.
September 12, 1956.
*646 Anderson, Scott, McCarthy & Preston, Robert H. Anderson and Wm. C. Steel, Miami, for appellant.
W.F. Parker, Miami, for appellee.
CROSBY, Associate Justice.
In this case the appellant wife brings before us for review a circuit court decree awarding her alimony unconnected with causes of divorce under Section 65.10, Florida Statutes 1953, F.S.A. The only question involved in the appeal is the amount of alimony awarded by the lower *647 court, which appellant seeks to have increased.
Dolores Fullman Astor and John Jacob Astor were married on August 6, 1954, at Arlington, Virginia, and immediately embarked upon an elaborate honeymoon trip to Europe. Some six weeks later, upon the docking of the ship in which they returned to the United States, the parties separated and have continued to live separate and apart. On November 22, 1954, appellant filed a complaint against her husband alleging separation through appellee's fault "because of (his) threats to inflict bodily injury on her and because of other misconduct of such an intimate nature that the Plaintiff would prefer not to allege it but of which Defendant is fully aware", and appellee's failure and refusal, since the separation, "to give her any money to maintain herself or to contribute to her maintenance."
Appellee responded to the complaint with an answer denying that he was validly married to appellant or that he was guilty of the misconduct charged in the complaint. With his answer appellee included a counterclaim asking that his marriage to appellant be annulled on the grounds of a prior subsisting marriage and fraud and deceit on the part of appellant, or that he be granted an absolute divorce on the ground of extreme cruelty.
After hearing the evidence, the chancellor found that the parties were living apart through the fault of appellee, that appellee was under a duty to support his wife, that he was estopped to deny the validity of their marriage, and that appellee failed to prove by a preponderance of the evidence either his residence in the State of Florida or his charge of extreme cruelty. So, despite his announced opinion that the appellant was "motivated and dominated by greed for money" and his rejection of her "despicable narration of imagined incidents which she said had occurred in the privacy of staterooms and hotel suites during the honeymoon," the chancellor dismissed the counterclaim and ordered the husband to pay his wife for her support and maintenance the sum of $75 per week, costs of the suit, and a reasonable fee to the wife's attorneys, which he found to be $12,500.
The sole question presented by this appeal is whether under these facts the amount of support money decreed for the appellant falls within the limits of judicial discretion that may be properly exercised by a court of equity under Section 65.10, Florida Statutes 1953, F.S.A. We do not have here some of the usual criteria that would serve as a guide. There is no question of the husband's ability to pay any reasonable sum awarded to his wife. The wife's testimony presents no picture of unusual need on her part. The parties lived together only during their honeymoon, and the wife admits (and we agree) that her husband should not be charged with maintaining her in the same luxury that these parties enjoyed during that period. Cf. Pawley v. Pawley, Fla., 46 So.2d 464, 28 A.L.R.2d 1358; Kaufman v. Kaufman, Fla., 63 So.2d 196, where we recognized the right of the husband to determine his family's standard of living. We must, therefore, look further for guidance in the present case.
The appellant is twenty-six years of age, attended the University of Chicago for two years, was employed in a number of positions prior to her marriage, and is presently living with her parents. She has no money or independent means of support. As a result of osteomyelitis, incurred at an early age, she has an infirmity of the left leg and spine but is capable of gainful employment. She has in the past earned as much as $65 per week, although she is not now employed.
John Jacob Astor is forty-two years of age. His net worth is four and three-quarter millions. Before taxes, his 1954 income was approximately $250,000. After taxes, his income was some $63,000. He spent a total of $238,000 during 1954, none of which was in business but was for "personal *648 expenses, litigation expense and honeymoon and office expense." He paid attorneys $105,000 in 1954 for domestic relations litigation. The cost of maintaining his Pine Tree Drive house, Fifth Avenue apartment, and Basking Ridge estate exceeds $40,000 each year. His annual income never varies by more than five per cent, from year to year. It is apparent that the appellee has been accustomed to live in the luxury that his substantial wealth permits.
The chancellor felt that the short duration of this marriage and his view of the wife's motives in entering upon the marriage required an award of alimony substantially equal to the income she was able to earn prior to the marriage, in effect a restoration of the status quo ante. With this we cannot agree. To do so would fail to recognize the fundamental nature of the marriage relationship and the rights and obligations it imposes upon each of the parties. So long as the marriage continues, a husband is under an obligation to support his wife in a manner approximating that which he has established, giving due regard to financial condition, earning capacity, and other circumstances of either spouse that may bear upon the discharge of this obligation. Where, as here, the parties have not lived together a sufficient time or under such circumstances as to establish an accustomed standard of living, the wife is entitled to live in a manner reasonably consonant with that which the husband has fixed for himself.
Appellant is living separate and apart from her husband through his fault and the marriage relation remains, along with the possibility, however remote, of a reconciliation. This is not a situation where the equities were found against the wife in divorce litigation, which would be more compatible with the award made here. Nor is it a case requiring a division of assets, since the marriage remains intact. The sole purpose of alimony awarded under Section 65.10, supra, is support. Although the misconduct of the husband may be considered in fixing the amount, the award should not be punitive in character. Schouler's Divorce Manual, pages 387-8; Kaufman v. Kaufman, supra. By the same token, the award to the wife should not be diminished by faults on her part, when, in the final analysis, she is living separate and apart from her husband through his fault.
Assessment of the amount of an award of alimony to a wife under Section 65.10, supra, necessarily involves the exercise of judicial discretion. We have repeatedly held that this court "will not disturb the order of a lower Court in the exercise of its Judicial discretion unless an abuse of this discretion is clearly shown." Blue v. Blue, Fla., 66 So.2d 228, 229; Cf. Ellard v. Godwin, Fla., 77 So.2d 617; Albert v. Miami Transit Co., Inc., 154 Fla. 186, 17 So.2d 89. We conclude, however, under the circumstances of this case and in the light of the chancellor's finding that the present status exists through the husband's fault, that the wife's maintenance should be substantially increased in order to conform reasonably with the mode of living that the husband has set for himself.
Under the authority vested in this court by virtue of Section 59.34, Florida Statutes, 1953, F.S.A., that portion of the final decree allowing the wife $75 each week for support and maintenance is amended to allow the wife $250 each week for support and maintenance.
The costs of this appeal shall be paid by appellee.
Reversed in part, affirmed in part, and remanded for entry of an amended final decree in accordance with this opinion.
DREW, C.J., and ROBERTS and O'CONNELL, JJ., concur.