CARROLL, DONALD K., Judge.
The question before us on this interlocutory appeal is whether the Chancellor below abused his discretion in entering the order appealed from modifying the child custody provisions in a final divorce decree he had earlier entered.
The appellee-wife had filed a suit for divorce against the appellant in the Circuit Court for Alachua County and obtained a decree granting the divorce but awarding the custody of the two children born of the marriage to the appellant-husband, the decree providing that “he is to keep them in the home of his parents, until the further order of the Court.” In the order the Court retained jurisdiction over the parties and the subject matter of this cause to make such further orders as may be required concerning the custody and support of these children.
Subsequently the appellee filed a petition to modify the custody provisions of the final decree pursuant to Section 65.14, Florida Statutes, F.S.A., averring that the circumstances of the parties had changed in that the two children had been moved from *340 their paternal grandparents’ home near the appellee’s residence to the grandparents’ new home in a distant city.
After hearing the testimony of the parties, the Chancellor entered the modification order appealed from, awarding custody of the children to the appellee, with visitation privileges in the appellant, who was required to pay appellee $85 per month to assist her with the support of the children.
In his order the Chancellor pointed out that “it has not been shown that the plaintiff is an unfit mother. The defendant concedes this point, although holding' the opinion that the children would be better off where they are. Under these circumstances the right of the natural mother must prevail over the right of the grandparents to custody of the children.” Among the Chancellor’s findings of fact were these: that the appellant after the final decree had been remarried to a person other than the appellee for more than eight months prior to the hearing, but had made no attempt to take the children into his home; that it did not appear to the Court that the appellant had any other real intention but to leave the children with his parents permanently, to be reared by them; that since the final decree the appellee had a steady job earning $60 a week, renting an apartment near her church and the school which her oldest child, born of a previous marriage, attended, which apartment would be ample to accommodate the other two children if she had them with her. He further pointed out that because the grandparents had moved from Melrose to St. Petersburg, Florida, with the children, it had become increasingly difficult for the ap-pellee to keep in touch with her children.
In this order, entered about fifteen months after the entry of the final decree of divorce, the Court again retained jurisdiction over the parties and subject-matter of the cause to make such further orders as may be necessary concerning the custody and support of the two children.
Appellant’s principal contention is that the Court had no authority to modify the custodial decree so that the right of the natural mother would prevail over the rights of the grandparents to the custody of the children, where no change of circumstances is shown except that the children moved from Putnam County to St. Petersburg, thereby making it increasingly difficult for the mother to keep in touch with the children.
We recognize and will follow the rule relied on by the appellant and laid down by the Florida Supreme Court in Frazier v. Frazier, 109 Fla. 164, 147 So. 464, 465, as follows:
“It is undoubtedly the law of this state that the proper custody of a minor child of divorced parents is a proper subject for judicial consideration at any time by the court which granted the decree of divorce. Meadows v. Meadows, 78 Fla. 576, 83 So. 392. But it is likewise the law that a decree in a divorce suit fixing the custody of a child of the parents being divorced, whether based on a stipulation entered into by the parties and approved by the court, or whether entered by the court after adversary hearing and determination of a contested issue respecting the matter, is, nevertheless a final decree of the court on the conditions then existing, and is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the court, and then only for the welfare of the child.”
Our recognizing this rule does not avail the appellant, for we think the Chancellor’s order was in compliance with it. He found several conditions that had altered since the final decree having a bearing on his custody, and we cannot say that *341 he abused his discretion in changing the custody of the two children by awarding it to their natural mother. The evidence contains ample evidence from which the Chancellor, in the exercise of his discretion, could have lawfully found, as he did, that under the changed conditions the best interests of the children would be served by giving their custody to her.
The best statement of the law that we have found in situations of this kind is that of the Florida Supreme Court in State ex rel. Sparks v. Reeves, 97 So.2d 18, 20, as follows:
“While according to the trial judge a broad judicial discretion in the matter we nevertheless cannot lose sight of the basic proposition that a parent has a natural God-given legal right to enjoy the custody, fellowship and companionship of his offspring. State ex rel. Weaver v. Hamans, 118 Fla. 230, 159 So. 31. This is a rule older than the common law itself and one which had its inception when Adam and Eve gave birth to Cain in the Garden of Eden. Gen. 4:1. In cases such as this one the only limitation on this rule of parental privilege is that as between the parent and the child the ultimate welfare of the child itself must be controlling.”
See also Epperson v. Epperson, Fla., 101 So.2d 367, and Johns v. Johns, Fla.App., 108 So.2d 784.
In other words, as we conceive the rule, while a parent has a natural God-given legal right to enjoy the custody, fellowship, and companionship of his offspring, that does not mean that under all circumstances a parent will be awarded the custody of his or her child against the claims of relatives or friends, as the case may be. In the final analysis it depends upon the ultimate welfare, or the best interest, of the child, which is the polestar or controlling principle to be observed.
In this case the Chancellor’s order not only was in recognition of this natural God-given right of a parent, the mother, but there was ample evidence from which he could find that the best interests of the children lay with custody in the mother.
The order appealed from is affirmed.
WIGGINTON, Chief Judge, and STUR-GIS, J., concur.